UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

LESLIE JOE EHRHART,            :
                              :
        Plaintiff             :    No. 1:12-CV-00338
                              :
    vs.                       :    (Judge Caldwell)
                              :
CAROLYN W. COLVIN, ACTING     :
COMMISSIONER OF SOCIAL        :
SECURITY,                     :
                              :
        Defendant             :

FILED
HARRISBURG PA

AUG 2 7 2013

MARY E. D'ANDREA CLERK
Per /S/ _____
          Deputy Clerk

MEMORANDUM

BACKGROUND

        The above-captioned action is one seeking review of a
decision of the Commissioner of Social Security ("Commissioner")
denying Plaintiff Leslie Joe Ehrhart's claim for social security
disability insurance benefits.

        On April 14, 2009, Ehrhart protectively filed[1] an
application for disability insurance benefits. Tr. 10, 27, 67, 128
and 144.[2]  On September 14, 2009, the Bureau of Disability
Determination[3] denied Ehrhart's application. Tr. 10 and 68-72.  On

---

1.  Protective filing is a term for the first time an individual
contacts the Social Security Administration to file a claim for
benefits.  A protective filing date allows an individual to have
an earlier application date than the date the application is
actually signed.

2.  References to "Tr.__" are to pages of the administrative
record filed by the Defendant as part of the Answer on April 23,
2012.

3.  The Bureau of Disability Determination is an agency of the
state which initially evaluates applications for disability
insurance benefits on behalf of the Social Security
                                              (continued...)

October 1, 2009, Ehrhart requested a hearing before an administrative law judge. Tr. 10. After 11 months had passed, a hearing was held on September 7, 2010. Tr. 10 and 22-66. On November 30, 2010, the administrative law judge issued a decision denying Ehrhart's application. Tr. 10-21. The administrative law judge found that Ehrhart had the ability to engage in a limited range of light work as will be described more fully below. Tr. 15. On December 21, 2010, Ehrhart requested that the Appeals Council review the administrative law judge's decision and on January 26, 2012, the Appeals Council concluded that there was no basis upon which to grant Ehrhart's request for review. Tr. 1-6. Thus, the administrative law judge's decision stood as the final decision of the Commissioner.

Ehrhart then filed a complaint in this court on February 22, 2012. Supporting and opposing briefs were submitted and the appeal[4] became ripe for disposition on July 20, 2012, when Ehrhart filed a reply brief.

Disability insurance benefits are paid to an individual if that individual is disabled and "insured," that is, the individual has worked long enough and paid social security taxes. The last date that a claimant meets the requirements of being

---

3. (...continued)
Administration. Tr. 69.

4. Under the Local Rules of Court "[a] civil action brought to review a decision of the Social Security Administration denying a claim for social security disability benefits" is "adjudicated as an appeal." M.D.Pa. Local Rule 83.40.1.

insured is commonly referred to as the "date last insured."  It is undisputed that Ehrhart meets the insured status requirements of the Social Security Act through March 31, 2014. Tr. 10, 12 and 128.

Ehrhart was born on September 2, 1961, and at all times relevant to this matter was considered a "younger individual"[5] whose age would not seriously impact his ability to adjust to other work.  20 C.F.R. § 404.1563©. Tr. 29. 67 and 144.  Ehrhart graduated from high school in 1979 and can, read, write, speak and understand the English language and perform basic mathematical functions such as paying bills, counting change handling a savings account and using a checkbook and money orders. Tr. 147, 154 and 162.  During his elementary and secondary schooling, Ehrhart attended regular education classes. Tr. 154.  During high school, Ehrhart attended vocational classes in building maintenance. Tr. 29 and 154.  At some point after graduating from high school, Ehrhart obtained a commercial driver's license. Tr. 39.

Ehrhart has a lengthy history of work and earnings. Records of the Social Security Administration reveal that Ehrhart had earnings in the years 1979 through 2009, a period of 31 years. Tr. 129.  Ehrhart's average earnings during those 31 years were $15,966.07.  Id.  Ehrhart's earnings ranged from a low of $2110.87

---

5.  The Social Security regulations state that "[t]he term younger individual is used to denote an individual 18 through 49."  20 C.F.R., Part 404, Subpart P, Appendix 2, § 201(h)(1).

3

in 2009 to a high of $32,080.00 in 2002. Id. Ehrhart's total earnings from 1979 through 2009 were $494,948.28. Id.

A vocational expert identified Ehrhart's past relevant employment[6] as follows: (1) a pipe threading machine operator described as skilled, medium work as usually performed in the economy but heavy work as actually performed by Ehrhart; (2) a tractor trailer driver described as semi-skilled, medium work; (3) a janitor described as unskilled, medium work; (4) a warehouse worker described as unskilled, medium work as generally performed in the economy but heavy work as actually performed by Ehrhart; and (5) a garbage collection driver described as semi-skilled, medium work as usually performed but heavy work as actually performed by Ehrhart.[7] Tr. 51-52.

---

6. Past relevant employment in the present case means work performed by Ehrhart during the 15 years prior to the date his claim for disability benefits was adjudicated by the Commissioner. 20 C.F.R. §§ 404.1560 and 404.1565.

7. The terms sedentary, light, medium, heavy and very heavy work are defined in the regulations of the Social Security Administration as follows:

> (a) *Sedentary work*. Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

> (b) *Light work*. Light work involves lifting no more than 20 pounds at a time with frequent lifting or

(continued...)

Ehrhart contends that he became disabled on January 16, 2009, because of both physical and mental impairments. Tr. 12 and 27. The physical impairments suffered by Ehrhart include Best Disease which impacts his vision.[8] Id. Ehrhart claims that he has

---

7. (...continued)
carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

(c) *Medium work.* Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can do sedentary and light work.

(d) *Heavy work.* Heavy work involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. If someone can do heavy work, we determine that he or she can also do medium, light, and sedentary work.

(e) *Very heavy work.* Very heavy work involves lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more. If someone can do very heavy work, we determine that he or she can also do heavy, medium, light and sedentary work.

20 C.F.R. § 404.1567.

8. "Best disease, also known as vitelliform macular dystrophy, is an inherited form of macular degeneration characterized by a loss of central vision. . . Best disease affects the macula, the central part of the retina responsible for fine visual detail and
(continued...)

extremely poor vision even with corrective lenses to the point that he has to use a magnifying glass to read. Tr. 39-40 and 60. The mental impairments include generalized anxiety disorder and attention deficit disorder. Tr. 12 and 27. Ehrhart worked on a part-time basis mowing grass and performing sanitation duties at a church camp after the alleged onset date but the work did not amount to substantial gainful activity. Tr. 12, 125-126, 134-143 and 205.

For the reasons set forth below we will remand the case to the Commissioner for further proceedings.

**STANDARD OF REVIEW**

When considering a social security appeal, we have plenary review of all legal issues decided by the Commissioner. See Poulos v. Commissioner of Social Security, 474 F.3d 88, 91 (3d Cir. 2007); Schaudeck v. Commissioner of Social Sec. Admin., 181 F.3d 429, 431 (3d Cir. 1999); Krysztoforski v. Chater, 55 F.3d 857, 858 (3d Cir. 1995). However, our review of the Commissioner's findings of fact pursuant to 42 U.S.C. § 405(g) is to determine whether those findings are supported by "substantial evidence." Id.; Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988); Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993). Factual findings which are supported by substantial evidence must

---

8. (...continued)
color perception." Foundation Fighting Blindness, Eye Conditions, Other Retinal Diseases, Best Disease, http://www.blindness.org/ index.php?view=article&id=246%3Abest-disease&option=com_content&I temid=88 (Last accessed August 26, 2013).

be upheld. 42 U.S.C. §405(g); Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001)("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently."); Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981)("Findings of fact by the Secretary must be accepted as conclusive by a reviewing court if supported by substantial evidence."); Keefe v. Shalala, 71 F.3d 1060, 1062 (2d Cir. 1995); Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001); Martin v. Sullivan, 894 F.2d 1520, 1529 & 1529 n.11 (11th Cir. 1990).

Substantial evidence "does not mean a large or considerable amount of evidence, but 'rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Pierce v. Underwood, 487 U.S. 552, 565 (1988)(quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)); Johnson v. Commissioner of Social Security, 529 F.3d 198, 200 (3d Cir. 2008); Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999). Substantial evidence has been described as more than a mere scintilla of evidence but less than a preponderance. Brown, 845 F.2d at 1213. In an adequately developed factual record substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." Consolo v. Federal Maritime Commission, 383 U.S. 607, 620 (1966).

7

Substantial evidence exists only "in relationship to all the other evidence in the record," Cotter, 642 F.2d at 706, and "must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 488 (1971). A single piece of evidence is not substantial evidence if the Commissioner ignores countervailing evidence or fails to resolve a conflict created by the evidence. Mason, 994 F.2d at 1064. The Commissioner must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. Johnson, 529 F.3d at 203; Cotter, 642 F.2d at 706-707. Therefore, a court reviewing the decision of the Commissioner must scrutinize the record as a whole. Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981); Dobrowolsky v. Califano, 606 F.2d 403, 407 (3d Cir. 1979).

**SEQUENTIAL EVALUATION PROCESS**

To receive disability benefits, the plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 432(d)(1)(A). Furthermore,

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work

8

which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A).

The Commissioner utilizes a five-step process in evaluating claims for disability insurance benefits. See 20 C.F.R. §404.1520; Poulos, 474 F.3d at 91-92. This process requires the Commissioner to consider, in sequence, whether a claimant (1) is engaging in substantial gainful activity,[9] (2) has an impairment that is severe or a combination of impairments that is severe,[10] (3) has an impairment or combination of impairments that meets or equals the requirements of a listed impairment,[11]

---

9. If the claimant is engaging in substantial gainful activity, the claimant is not disabled and the sequential evaluation proceeds no further.

10. The determination of whether a claimant has any severe impairments, at step two of the sequential evaluation process, is a threshold test. 20 C.F.R. § 404.1520(c). If a claimant has no impairment or combination of impairments which significantly limits the claimant's physical or mental abilities to perform basic work activities, the claimant is "not disabled" and the evaluation process ends at step two. Id. If a claimant has any severe impairments, the evaluation process continues. 20 C.F.R. § 404.1520(d)-(g). Furthermore, all medically determinable impairments, severe and non-severe, are considered in the subsequent steps of the sequential evaluation process. 20 C.F.R. §§ 404.1523 and 404.1545(a)(2).

11. If the claimant has an impairment or combination of impairments that meets or equals a listed impairment, the claimant is disabled. If the claimant does not have an impairment

(continued...)

(4) has the residual functional capacity to return to his or her past work and (5) if not, whether he or she can perform other work in the national economy. Id. As part of step four the administrative law judge must determine the claimant's residual functional capacity. Id.[12]

Residual functional capacity is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. See Social Security Ruling 96-8p, 61 Fed. Reg. 34475 (July 2, 1996). A regular and continuing basis contemplates full-time employment and is defined as eight hours a day, five days per week or other similar schedule. The residual functional capacity assessment must include a discussion of the individual's abilities. Id; 20 C.F.R. § 404.1545; Hartranft, 181 F.3d at 359 n.1 ("'Residual functional capacity' is defined as that which an individual is still able to do despite the limitations caused by his or her impairment(s).").

---

11. (...continued)
or combination of impairments that meets or equals a listed impairment, the sequential evaluation process proceeds to the next step. 20 C.F.R. § 404.1525 explains that the listing of impairments "describes for each of the major body systems impairments that [are] consider[ed] to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." Section 404.1525 also explains that if an impairment does not meet or medically equal the criteria of a listing an applicant for benefits may still be found disabled at a later step in the sequential evaluation process.

12. If the claimant has the residual functional capacity to do his or her past relevant work, the claimant is not disabled.

**DISCUSSION**

The administrative law judge went through each step of the sequential evaluation process and (1) found that Ehrhart had not engaged in substantial gainful activity since January 16, 2009; (2) found that Ehrhart had the severe impairments[13] of right ulnar neuropathy proximal to the wrist with superimposed tendinous and ligamentous injury, Best Disease, generalized anxiety disorder, adjustment disorder with depressed mood, and attention deficit hyperactivity disorder; (3)found that Ehrhart had a non-severe shoulder, elbow and back impairment; (4) found that Ehrhart was diagnosed with avoidant personality disorder and a learning disorder but that those disorders were not medically determinable; (5) found that Ehrhart's impairments did not meet or equal a listed impairment; (6) found that Ehrhart lacked credibility; (7) rejected the opinion of Stephen J. Overcash, a clinical psychologist, who evaluated Ehrhart on June 4, 2009, and found that Ehrhart suffered from generalized anxiety disorder(DSM code

---

13. An impairment is "severe" if it significantly limits an individuals ability to perform basic work activities. 20 C.F.R. § 404.921. Basic work activities are the abilities and aptitudes necessary to do most jobs, such as walking, standing, sitting, lifting, pushing, seeing, hearing, speaking, and remembering. Id. An impairment or combination of impairments is "not severe" when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual ability to work. 20 C.F.R. § 416.921; Social Security Rulings 85-28, 96-3p and 96-4p.

300.02), attention deficit hyperactivity disorder (DSM code 314.00), adjustment disorder with depressed mood (DSM code 309.00), a learning disorder(DSM code 315.90) and avoidant personality disorder(DSM code 301.82), and that Ehrhart was permanently disabled from any gainful employment(Tr. 258-262 and 310); (8) rejected the opinion of Peter Moskel, M.D., a treating psychiatrist, with Momentum Services, Chambersburg, Pennsylvania, that Ehrhart suffered from several extreme and marked mental functional limitations which according to the vocational expert if found to be credible would prevent Ehrhart from engaging in any substantial gainful activity (Tr.54-56 and 313-316); and (8) concluded that Ehrhart could not perform his past relevant work but that he could perform a limited range of light work. Tr. 12-21. Specifically, the administrative law judge stated that Ehrhart could engage in full-time light work as defined in the regulations

> except the claimant can lift only 20 pounds occasionally and 10 pounds frequently; cannot perform constant repetitive reaching; and cannot perform work requiring fine visual acuity. The claimant is further limited to routine, repetitive, unskilled, low stress work requiring no precise attention to detail, no piece rate work, and no specific production quotas.

Tr. 15. At the administrative hearing, the administrative law judge asked the vocational expert to consider an individual with

the above residual functional capacity and Ehrhart's age, education and work background.

In response to the administrative law judge's questions, the vocational expert identified occupations as counter attendant (lunchroom), bakery worker (conveyer line) and ticket taker,[14] and that there were a significant number of such jobs in the local, regional and national economies. Based on that testimony, the administrative law judge found that Ehrhart was not disabled because he could perform those three jobs

Ehrhart argues, inter alia, that the decision of the Commissioner at step five of the sequential evaluation process is not supported by substantial evidence because the jobs identified by the vocational expert required occasional or frequent "near [visual] acuity" and the ALJ found that Ehrhart could not perform jobs that required "fine visual acuity." Tr. 15. Ehrhart's argument has merit. The Commissioner does not argue in opposition that there is any distinction between "fine" and "near" visual acuity. Instead, the Commissioner argues based on the testimony of the vocational expert that the ticket taker position merely

_____

14. In his decision the ALJ specified the Dictionary of Occupational Titles (DOT) number for each position. The counter attendant position is 311.477-014, the bakery worker is 524.687-022 and the ticket taker is 344.667-010. These positions according to the DOT require either occasional or frequent "near acuity" with respect to vision.

required Ehrhart to see the color of the ticket stub and not visually examine the ticket for a date, and consequently, because there is one job which Ehrhart can perform he is not disabled. The testimony of the vocational expert conflicts with the Dictionary of Occupational Titles which states that the date issued does need to be checked. Tr. 217-219.  The vocational expert's testimony also did not address the Dictionary of Occupational Titles's reference to the need to count and record the number of tickets collected during a work shift.  The vocational expert did not explain the conflict between his testimony that the job of ticket taker required no near visual acuity and the DOT's specification of the need for "frequent" near acuity in the ticket taker position. Furthermore, one symptom of Best Disease is a loss of color distinction and the ALJ did not address the issue of whether Ehrhart has such a loss.

The ALJ erroneously accepted the testimony of the vocational expert who indicated that his testimony was consistent with the Dictionary of Occupational Titles. Under Social Security Ruling 00-4p an administrative law judge before relying on expert vocational testimony must "[i]dentify and obtain a reasonable explanation for any conflicts between occupational evidence provided by [the vocational expert] and information in the Dictionary of Occupational Titles, including its companion

publication, the Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles (SCO), published by the Department of Labor" and "[e]xplain in the determination or decision how any conflict that has been identified was resolved."

The administrative law judge at the hearing on September 7, 2010, asked the vocational expert the following question: "As you have described these jobs are they consistent with how they are described in the Dictionary of Occupational Titles?" Tr. 54. The vocational expert responded in the affirmative. Id. The administrative law judge has a duty to develop the record and flesh out any inconsistencies. SSR 00-4p requires the ALJ where the testimony from the vocational expert "appears to conflict with the DOT" to "obtain a reasonable explanation for the apparent conflict." This the ALJ did not do.

Ehrhart also argues that the ALJ inappropriately rejected the opinions of Dr. Overcash and Dr. Moskel. We find substantial merit in this argument. The administrative law judge rejected the opinions of Dr. Overcash and Dr. Moskel, both health providers who had contact with Ehrhart. Dr. Moskel assessed Ehrhart with functional mental limitations which precluded Ehrhart from engaging in full-time light work.

The preference for the treating physician's opinion has been recognized by the Court of Appeals for the Third Circuit and

by all of the federal circuits. See, e.g., Morales v. Apfel, 225 F.3d 310, 316-18 (3d Cir. 2000). Dr. Moskel was a treating physician. When the treating physician's opinion conflicts with a non-treating, non-examining physician's opinion, the administrative law judge may choose whom to credit in his or her analysis, but "cannot reject evidence for no reason or for the wrong reason." Id. In choosing to reject the evaluation of a treating physician, an administrative law judge may not make speculative inferences from medical reports and may reject treating physician's opinions outright only on the basis of contradictory medical evidence. Id. An administrative law judge may not reject a written medical opinion of a treating physician based on his or her own credibility judgments, speculation or lay opinion. Id. An administrative law judge may not disregard the medical opinion of a treating physician based solely on his or her own "amorphous impressions, gleaned from the record and from his evaluation of the [claimant]'s credibility." Id. As one court has stated, "Judges, including administrative law judges of the Social Security Administration, must be careful not to succumb to the temptation to play doctor" because "lay intuitions about medical phenomena are often wrong." Schmidt v. Sullivan, 914 F.2d 117, 118 (7th Cir 1990).

16

In this case the administrative law judge did not point to and rely on an opinion from a physician or psychologist contrary to the opinion of Dr. Moskel.[15]  The vocational expert in this case testified that an individual with the limitations assessed by Dr. Moskel would be unemployable.

Also, the administrative law judge in evaluating Ehrhart's credibility did not consider his lengthy work history. As noted earlier in this order, Ehrhart had consistent employment from 1979 to 2009, a 31-year work history.  "When a claimant has worked for a long period of time, [his] testimony about [his] work capabilities should be accorded substantial credibility."  Rieder v. Apfel, 115 F.Supp.2d 496, 505 (M.D.Pa. 2000)(Munley, J.)(citing Dobrowolsky v. Califano, 606 F.2d 403, 409 (3d Cir. 1979)).  The administrative law judge did not give an adequate reason for discrediting Ehrhart's testimony.  We cannot conclude that Dr.

_____

15.  Although the record contains an opinion from a state agency psychologist who merely reviewed Ehrhart's medical record which is supportive of a finding that Ehrhart is no mentally disabled, the administrative law judge specifically declined to adopt that opinion and stated that the state agency psychologist "did not have an opportunity to observe, examine or treat the claimant" and that the state agency psychologist's opinion was "inconsistent with the record as a whole, including the additional evidence received at the hearing level." Tr. 19. Furthermore, the state agency psychologist's opinion that Ehrhart was not disabled was based an incomplete assessment of Ehrhart's medically determinable impairments.  The state agency psychologist did not address whether or not Ehrhart suffered from a learning disorder or an avoidant personality disorder. Tr. 265.

Overcash's assessment that Ehrhart suffered from a learning disorder and an avoidant personality disorder wan not supported by objective signs.

One final error that must be addressed is the administrative law judge's failure at step two of the sequential evaluation process to give an adequate explanation for rejecting Dr. Overcash's assessment that Ehrhart suffered from a learning disorder and avoidant personality disorder. As noted above, the ALJ found that these conditions were not medically determinable. The ALJ stated that the "diagnoses were provided without the support of any accompanying . . . objective signs." However, Dr. Overcash on June 4, 2009, evaluated Ehrhart and administered several psychological tests. Tr. 258-262. Dr. Overcash found that Ehrhart's word recognition was at the 6.6 grade level, his arithmetic ability was at the 3.6 grade point level and his spelling was at the 6.7 grade point level. Tr. 259. Dr. Overcash noted that he gave Ehrhart the Integrated and Visual Continuous Performance Test and found that Ehrhart's auditory concentration was 54 and his visual concentration was 66 with normal being 100 plus or minus 5. Tr. 260. Dr. Overcash stated that these low scores "indicate trouble making deadlines, appointment times, getting to work, etc." Id. Also, Dr. Overcash engaged in

personality profile testing (the Million Clinical Multiaxial Inventory III(MCMI-III)). Id.

The determination of whether a claimant has any severe impairments, at step two of the sequential evaluation process, is a threshold test. 20 C.F.R. § 404.1520(c). If a claimant has no impairment or combination of impairments which significantly limit the claimant's physical or mental abilities to perform basic work activities, the claimant is "not disabled" and the evaluation process ends at step two. Id. If a claimant has any severe impairments, the evaluation process continues. 20 C.F.R. § 404.1520(d)-(g). A failure to find a medical condition severe at step 2 will not render a decision defective if some other medical condition was found severe at step two. However, all of the medically determinable impairments both severe and non-severe must be considered at step 4 when setting the residual functional capacity. The failure of the administrative law judge to find the learning disorder and an avoidant personality disorder as medically determinable impairments, or to give an adequate explanation for discounting those condition, makes his decision at steps four and five of the sequential evaluation process defective.

The error at step two of the sequential evaluation process, draws into question the administrative law judge's

residual functional capacity determination and assessment of the credibility of Ehrhart. The administrative law judge found that Ehrhart's medically determinable impairments could reasonably cause Ehrhart's alleged symptoms but that Ehrhart's statements concerning the intensity, persistence and limiting effects of those symptoms were not credible. Tr. 16. This determination by the administrative law judge was based on an incomplete and faulty analysis of all of Ehrhart's medically determinable impairments.

Our review of the administrative record reveals that the decision of the Commissioner is not supported by substantial evidence. We will, therefore, pursuant to 42 U.S.C. § 405(g) vacate the decision of the Commissioner and remand the case to the Commissioner for further proceedings.

An appropriate order will be entered.

_William W Caldwell_
WILLIAM W. CALDWELL
United States District Judge

Dated: August 27 , 2013

# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

LESLIE JOE EHRHART,　　　　　:
　　　　　　　　　　　　　　　　:
　　　　　　Plaintiff　　　　　:　　No. 1:12-CV-00338
　　　　　　　　　　　　　　　　:
　　　vs.　　　　　　　　　　　:　　(Judge Caldwell)
　　　　　　　　　　　　　　　　:
CAROLYN W. COLVIN, ACTING　　:
COMMISSIONER OF SOCIAL　　　　:
SECURITY,　　　　　　　　　　　:
　　　　　　　　　　　　　　　　:
　　　　　　Defendant　　　　　:

## ORDER

In accordance with the accompanying memorandum, **IT IS HEREBY ORDERED THAT:**

1. The Clerk of Court shall enter judgment in favor of Leslie Joe Ehrhart and against the Commissioner as set forth in the following paragraph.

2. The decision of the Commissioner of Social Security denying Leslie Joe Ehrhart disability insurance benefits is vacated and the case remanded to the Commissioner of Social Security to:

2.1 Conduct a new administrative hearing and appropriately evaluate the medical evidence and the credibility of Ehrhart.

3. The Clerk of Court shall close this case.

_William W. Caldwell_
WILLIAM W. CALDWELL
United States District Judge

Dated: August 27, 2013

FILED
HARRISBURG, PA

AUG 27 2013

MARY E. D'ANDREA, CLERK
Per _____
Deputy Clerk